ULYSSES ABBOTT, APPELLANT, V. GOULD, INC., APPELLEE.
TYREE BIGGS ET AL., APPELLANTS, V. GOULD, INC., APPELLEE.
443 N.W.2d 591

Filed July 21, 1989.   Nos. 87-857, 87-874.

Martin A. Cannon, of Matthews & Cannon, P.C., and Eugene Mattioni, of Mattioni, Mattioni & Mattioni, Ltd., for appellants.

Joseph K. Meusey, Thomas F. Hoarty, Jr., and Mary Kay Frank, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

CAPORALE, J.

In these consolidated appeals the plaintiffs-appellants, a number of former employees and personal representatives of certain former employees of defendant-appellee, Gould, Inc., seek to recover damages allegedly caused by the employer's conduct and that of its contract physician, defendant Robert J. Fitzgibbons, Sr., M.D. Gould demurred in part on the ground that the district court lacks subject matter jurisdiction. That court sustained Gould's demurrers and dismissed the actions as against it, which dismissal the plaintiffs assign as error. We affirm.

Pursuant to the district court's novel "Standing Order," the propriety of which does not now concern us, the various plaintiffs filed a "Master Long Form Petition," setting forth common allegations of fact. In addition, each plaintiff filed a "Short Form Petition," setting forth allegations of fact unique to each.

So far as is relevant to these appeals, the petitions allege that at the relevant times, Gould operated a secondary lead smelting and refining plant; that Gould knowingly misrepresented to employees that their work environment was reasonably safe and that the clothing and devices provided them and safety precautions taken would protect them from harm; that, in fact, Gould intentionally subjected its employees to contact with and ingestion of various airborne particles and fumes known to Gould to be injurious to human health; that Gould exacerbated the work hazards by intentionally failing to provide adequate

safeguards at the worksite and by intentionally refusing to disclose the true hazardous character of the work environment; that in an attempt to cover up the effects of the toxic exposures, Gould falsely and intentionally misrepresented that certain drugs and medications would prevent the harmful effects of whatever substances might be present in the work environment; that, as intended by Gould, its employees relied upon the misrepresentations and were thereby caused to ingest, without their informed consent, certain drugs and medications which independently caused them additional injury; and that Gould accomplished the foregoing in conspiracy with its contract physician.

The Nebraska Workers' Compensation Court has exclusive jurisdiction in actions arising under the Workers' Compensation Act. *Peak v. Bosse*, 202 Neb. 1, 272 N.W.2d 750 (1978). See, also, *Haumont v. City of Lincoln*, 229 Neb. 52, 424 N.W.2d 892 (1988); *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243 (1986). Our question becomes, then, whether plaintiffs' petitions state causes of action under the act. If so, exclusive jurisdiction lies in the compensation court, and the district court properly granted Gould's demurrers for want of subject matter jurisdiction, such jurisdiction being the power to hear and determine cases of the general class to which the proceedings in question belong. *State v. Gorman, ante* p. 738, 441 N.W.2d 896 (1989); *In re Interest of Adams,* 230 Neb. 109, 430 N.W.2d 295 (1988).

Neb. Rev. Stat. § 48-101 (Reissue 1988) provides, so far as pertinent to our inquiry, for workers' compensation benefits when an employee suffers personal injury caused by an occupational disease which arises out of and in the course of his or her employment.

> An occupational disease must be a natural incident of a particular occupation and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and which is in excess of that attending employment in general. . . .
>
> . . . .
>
> The requirement of [§ 48-151] is that the cause and conditions of the disease be characteristic of and peculiar

to the employment and that the disease be other than an ordinary disease of life. The statute does not require that the disease be one which originates exclusively from the employment. The statute means that the conditions of the employment must result in a hazard which distinguishes it in character from employment generally.

*Ritter v. Hawkeye-Security Ins. Co.*, 178 Neb. 792, 794-95, 135 N.W.2d 470, 472 (1965). Plaintiffs argue, in effect, that Gould's acts elevated the hazards to which they were exposed to a point well beyond that "natural[ly] incident" to the occupation of lead smelting and that their injuries thus are not within the comprehension of "occupational disease" as that term is used in the Workers' Compensation Act.

In *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 659, 228 N.W.2d 303, 306 (1975), this court held that the Workers' Compensation Act is

intended to cover only claims arising out of and in the course of the employment. The operative fact is one of coverage, not of election to file a claim for compensation. If coverage exists, even though for some reason compensation may not be payable, the [Workers'] Compensation Act is exclusive. If the accident does not arise out of and in the course of the employment, there is no coverage, and the parties then are not subject to the act. An adjudication that an injury does not arise out of or in the course of the employee's employment is a conclusive determination only of the fact that the [Workers'] Compensation Court lacks jurisdiction in the matter. This determination does not bar recourse to the tort remedy, if one exists.

More recently, in *P.A.M. v. Quad L. Assocs., supra* at 645, 380 N.W.2d at 246, quoting *Marlow v. Maple Manor Apartments, supra*, and *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985), it was observed:

"The [Workers'] Compensation Act provides the exclusive remedy by the employee against the employer for *any* injury arising out of and in the course of the employment. This is the basis on which the rights of employers and employees are put in balance. The

employer, by having liability imposed on him without fault, receives in return relief from tort actions. Logically, therefore, where the employer is negligent he should not be relieved of liability where compensation coverage is not provided to the employee.

". . . .

". . . The operative fact is one of coverage, not of election to file a claim for compensation. If coverage exists, even though for some reason compensation may not be payable, the [Workers'] Compensation Act is *exclusive*."

(Emphasis in original.)

This court has never before faced the precise question presented in this appeal: whether allegations that an employer intentionally concealed the dangers inherent in the work environment, intentionally inflicted injury resulting in occupational disease, and intentionally concealed the true nature and effect of the disease fall within or without the Workers' Compensation Act. However, the question is not without precedent.

In a case remarkably similar to those now before us, the injured employees alleged that their employer had intentionally concealed from them and from various state and federal agencies the fact of their continuing exposure to toxic chemicals and that they had been injured as a result. The Supreme Court of Ohio held that the risk of intentional tort committed by the employer was not one " ' "in the course of or arising out of [the employee's] employment.". . .' " *Blankenship v. Chemicals*, 69 Ohio St. 2d 608, 613, 433 N.E.2d 572, 576 (1982). The majority of that court reasoned that to hold otherwise would be tantamount to encouraging such conduct, a consequence which could not be reconciled with one of the purposes of the Workers' Compensation Act, namely, the promotion of a safe and injury-free work environment.

The Supreme Court of California reasoned differently in *Johns-Manville, etc. v. Contra Costa, etc.*, 27 Cal. 3d 465, 612 P.2d 948, 165 Cal. Rptr. 858 (1980). That court focused on the balance the Workers' Compensation Act achieves by poising the advantage of an employer's freedom from common-law

liability against the detriment of relatively swift and certain compensation liability, while giving the employee expeditious compensation benefits in return for the surrender of a potentially larger recovery at common law. The *Johns-Manville* court wrote:

> It is not uncommon for an employer to "put his mind" to the existence of a danger to an employee and nevertheless fail to take corrective action. . . . In many of these cases, the employer does not warn the employee of the risk. Such conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based. That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer. This balance would be significantly disturbed if we were to hold, as plaintiff urges, that any misconduct of an employer which may be characterized as intentional warrants an action at law for damages.

*Id.* at 474, 612 P.2d at 953-54, 165 Cal. Rptr. at 863. Thus, the majority of the court held that California's compensation act barred an action at law for the initial injury the employee suffered as the result of being exposed to asbestos at his work site. The *Johns-Manville* opinion went on to hold, however, that an action at law is available to the injured employee

> if the employer acts deliberately for the purpose of injuring the employee or if the harm resulting from the

intentional misconduct consists of aggravation of an initial work-related injury. . . .

In the present case, plaintiff alleges that defendant fraudulently concealed from him, and from doctors retained to treat him, as well as from the state, that he was suffering from a disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for the disease and inducing him to continue to work under hazardous conditions. These allegations are sufficient to state a cause of action for aggravation of the disease, as distinct from the hazards of the employment which caused him to contract the disease.

*Id.* at 476-77, 612 P.2d at 955, 165 Cal. Rptr. at 865. In a similar vein, the Supreme Court of New Jersey, in *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 501 A.2d 505 (1985), held that claims that the employer knowingly and deliberately exposed its employees to the adverse health effects of asbestos did not state a cause of action outside the workers' compensation law, but that the claim the employer fraudulently concealed its knowledge of already contracted diseases did state such a cause of action.

The foregoing analyses and others like them, however, fail to accord due deference to the fact that "[t]he primary object of compensation acts was to do away with the inadequacies and defects of the common-law remedies, to destroy the common-law defenses, and, in the employments affected, to give compensation, *regardless of the fault of the employer.*" (Emphasis supplied.) *Ray v. School District of Lincoln*, 105 Neb. 456, 462, 181 N.W. 140, 142 (1920).

Plaintiffs' reliance upon *Navracel v. Cudahy Packing Co.*, 109 Neb. 506, 191 N.W. 659 (1922), *reh'g denied* 109 Neb. 512, 193 N.W. 768 (1923), for the proposition that this court has since adopted an intentional tort exception to the compensation act is misplaced. It is true that the original *Navracel* opinion states:

An employer could not, of course, be protected by the provisions of the compensation act where he intentionally inflicts an injury upon an employee. Such an injury could hardly be said to be one which would be incidental to the employment, or one which would arise from the operation

of the employer's business.
*Id.* at 510, 191 N.W. at 660.

However, the language of a judicial opinion must be read in the context of the facts under consideration and its meaning limited by those facts. *Douglas County v. Vinsonhaler*, 82 Neb. 810, 118 N.W. 1058 (1908). *Navracel* held that an employee who had not formally rejected the coverage of the compensation act could not sue his employer at law for the latter's failure to guard certain machinery in violation of the factory act. It is obvious that read within the limitation of the *Navracel* facts, the obiter dictum upon which plaintiffs place so much emphasis did not adopt a rule of law which carved out an exception to the coverage of the compensation act. Indeed, *Edelman v. Ralph Printing & Lithographing, Inc.*, 189 Neb. 763, 765, 205 N.W.2d 340, 341 (1973), disapproves *Navracel* to the extent "it may imply a necessarily different result under the [Workers'] Compensation Act compulsory upon" an employee who accepts benefits under the act. Plaintiffs have cited us to no case from this jurisdiction which has applied an intentional tort exception to the compensation act, nor has our research disclosed any such case.

To ask us to read the compensation act of this jurisdiction in such a way as to require employers not only to provide workers' compensation benefits but also to defend and respond in damages to employee tort actions is to invite us to subvert the very purpose of the whole workers' compensation scheme. See *Griffin v. George's, Inc.*, 267 Ark. 91, 589 S.W.2d 24 (1979). It is an invitation we decline.

We thus hold that the allegations of the plaintiffs against Gould fall within the ambit of this state's Workers' Compensation Act and that the district court is therefore without subject matter jurisdiction in regard to those allegations.

Remaining to be considered is plaintiffs' contention that to so construe the act is to subject them to involuntary servitude in violation of U.S. Const. amend. XIII and Neb. Const. art. I, § 2, and to deprive them as well of due process by denying them a remedy by due course of law for their injuries, in violation of U.S. Const. amend. XIV and Neb. Const. art. I, §§ 3 and 13.

Plaintiffs' involuntary servitude argument under the federal Constitution is foreclosed by the holding in *U.S. v. Kozminski*, ____ U.S. ____, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988), to the effect that the conduct proscribed by the 13th amendment is limited to the use or threat of physical force or legal coercion to extract labor from an unwilling worker. Thus, the deceit, howsoever intentional, alleged here does not constitute involuntary servitude within the meaning of that amendment. We find nothing in Neb. Const. art. I, § 2, which requires different treatment than does the Constitution of our nation.

Plaintiffs' remaining constitutional arguments are resolved by noting that they have a remedy under the Workers' Compensation Act for all personal injuries proved to have been caused by an occupational disease arising out of and in the course of their employment with Gould, including both the initial effects caused by the work environment and any subsequent exacerbations of the same.

AFFIRMED.