BRUCE A. IHM, APPELLANT, V. CRAWFORD & COMPANY
AND ZURICH INSURANCE COMPANY, APPELLEES.
580 N.W. 2d 115

Filed June 26, 1998.    No. S-96-237.

Steven H. Howard, of Law Offices of Ronald J. Palagi, P.C., for appellant.

Thomas M. Locher and Paul A. Mihulka, of Hansen, Engles & Locher, P.C., for appellee Crawford & Co.

Thomas J. Culhane and Kevin R. McManaman, of Erickson & Sederstrom, P.C., for appellee Zurich Insurance Co.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## INTRODUCTION

The appellant, Bruce A. Ihm, was injured while working for Millar Elevator Service Company (Millar Elevator). Appellee

Zurich Insurance Company (Zurich) is Millar Elevator's workers' compensation insurance carrier, and appellee Crawford & Company is Zurich's agent for processing and administering workers' compensation claims. Ihm received treatment and underwent various surgeries as a result of his compensable injuries. During the course of his treatment, Ihm developed reflex sympathetic dystrophy. Unable to obtain adequate medical treatment in Nebraska for the condition, Ihm sought treatment in Colorado. Ihm claims that he suffered additional personal injuries and damages because his treatment for reflex sympathetic dystrophy was delayed as a result of the appellees' refusal to provide authorization for the treatment. Ihm's petition in the district court claimed that the delay violated the appellees' duty of good faith in processing and administering Ihm's workers' compensation claim. The district court sustained appellees' demurrers, finding that the Nebraska Workers' Compensation Act provided the exclusive remedy for Ihm's injuries and that therefore the court lacked subject matter jurisdiction over the cause. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

Ihm filed a petition in the district court for Douglas County on August 1, 1995, alleging that the appellees had failed to act in good faith in administering his workers' compensation claim. Specifically, Ihm alleged that on February 8, 1990, he suffered severe and debilitating injuries as a result of an on-the-job accident while he was employed by Millar Elevator. The petition states that the injuries Ihm received as a result of the accident were compensable under the Nebraska Workers' Compensation Act. Ihm claims that while undergoing treatment for his compensable injuries, he developed a condition known as reflex sympathetic dystrophy.

On December 5, 1995, the appellees each filed a demurrer to Ihm's petition. Zurich's demurrer asserted that Ihm's petition failed to state facts sufficient to constitute a cause of action. Crawford & Company's demurrer asserted that the district court lacked subject matter jurisdiction over the case, that there was an action pending between the parties for the same cause in the Nebraska Workers' Compensation Court, and that the petition did not state a cause of action.

On February 5, 1996, the district court sustained the appellees' demurrers. The court determined that the Workers' Compensation Court was the sole source of remedy over the issues of the case and that Ihm had failed to state sufficient facts to constitute a cause of action for the tort alleged under Nebraska law. The court then dismissed the case for lack of subject matter jurisdiction. Ihm timely appealed.

## ASSIGNMENTS OF ERROR

On appeal, Ihm asserts that the trial court erred (1) in sustaining the demurrers and finding the petition did not and could not state a cause of action, (2) in determining that the Nebraska Workers' Compensation Act provides the exclusive remedy for intentional bad faith tort claims and that the act bars any such action, and (3) in dismissing the action and not allowing Ihm an opportunity to amend his petition.

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Coburn v. Reiser, ante* p. 495, 577 N.W.2d 289 (1998); *Syracuse Rur. Fire Dist. v. Pletan, ante* p. 393, 577 N.W.2d 527 (1998).

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *Big John's Billiards v. Balka, ante* p. 528, 577 N.W.2d 294 (1998); *In re Interest of Floyd B., ante* p. 443, 577 N.W.2d 535 (1998).

## ANALYSIS

The Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment, and as such, payment of workers' compensation benefits relieves the employer of tort liability in connection with an accident. *Brown v. American Tel. & Tel. Co.*, 252 Neb. 95, 560 N.W.2d 482 (1997). The Nebraska Workers' Compensation Act extends a degree of immunity to

workers' compensation insurers as well. Neb. Rev. Stat. § 48-110 (Reissue 1993) provides in part:

When employer and employee shall by agreement, express or implied, or otherwise as provided in section 48-112 accept the provisions of the Nebraska Workers' Compensation Act, compensation shall be made for personal injuries to or for the death of such employee by accident arising out of and in the course of his or her employment, without regard to the negligence of the employer, according to the schedule provided in such act, in all cases except when the injury or death is caused by willful negligence on the part of the employee.

Neb. Rev. Stat. § 48-111 (Reissue 1993) further provides:

Such agreement or the election provided for in section 48-112 shall be a surrender by the parties thereto of their rights to any other method, form, or amount of compensation or determination thereof than as provided in the Nebraska Workers' Compensation Act, and an acceptance of all the provisions of such act, and shall bind the employee . . . as well as the employer . . . . For the purpose of this section, if the employer carries a policy of workers' compensation insurance, the term employer shall also include the insurer. The exemption from liability given an employer and insurer by this section shall also extend to all employees, officers, or directors of such employer or insurer . . . .

Read together, these two statutes provide that when an employee sustains an injury that arises out of and in the course of his or her employment and such injury is covered by the Nebraska Workers' Compensation Act, then the employee surrenders his or her right to any other method, form, or amount of compensation or determination thereof for that injury against his or her employer or the workers' compensation insurer.

Ihm's action against the appellees is an action for the intentional tort of bad faith. The primary question presented by this case is whether Ihm can maintain such an action given the foregoing exclusivity provisions of the Nebraska Workers' Compensation Act. If the exclusivity provisions bar an action for bad faith against a workers' compensation insurer, then the

district court lacked subject matter jurisdiction over the action and correctly sustained the appellees' demurrers.

Ihm's petition states that the original accident arose out of and in the course of his employment and that the injuries he sustained as a result of the accident are compensable under the Nebraska Workers' Compensation Act. Ihm further pled that he has performed "all the terms, covenants and conditions to be performed on his part under the Nebraska Workers' Compensation Act." However, it is Ihm's position that the action against the appellees is not an action for compensation for his work-related injuries. Rather, Ihm claims, and we must assume for the purposes of this appeal, that the appellees breached their duty of good faith in the administration of his workers' compensation claim by refusing to authorize reasonable medical treatment for his compensable injuries. Ihm asserts that this refusal and the resultant delay in treatment caused him to suffer greater permanent impairment, extended pain and suffering, lost wages and loss of earning power because of the greater permanent impairment, future medical expenses, severe mental anguish and psychological injuries, and impaired ability "to recover medically."

The issue whether an employee may bring a bad faith tort action against a workers' compensation insurer for acts that occurred during the administration of a claim has been analyzed in other jurisdictions under various statutory schemes. Professor Arthur Larson, in his treatise on workers' compensation, notes that in a "great majority" of tort actions based on intentional delay in or termination of payments or of medical treatments, a cause of action was held not to lie. 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 68.34(c) at 13-199 (1998). However, Ihm contends that several jurisdictions allow intentional tort actions against workers' compensation insurers. See, e.g., *Hough v. Pacific Ins. Co., Ltd.*, 83 Haw. 457, 927 P.2d 858 (1996); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985); *Southern Farm Bureau Cas. Ins. v. Holland*, 469 So. 2d 55 (Miss. 1984); *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 609 P.2d 257 (1980).

As a first step, we point out that this court examined the meaning of § 48-111 as it applies to insurer liability in *Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920

(1974). In *Pettigrew v. Home Ins. Co.*, the employee sustained a compensable injury and received benefits. The employee then brought a tort action, based on negligence rather than intentional conduct, and a contract action against the workers' compensation insurer. The insurer allegedly provided safety engineering for the benefit of the employees and advised the employer in safety practices. The employee claimed that the insurer failed to use reasonable care in the inspection of the premises and equipment used in construction on the jobsite. The insurer asserted that § 48-111 immunized it from third-party actions. We agreed, stating:

> The sentence "For the purpose of this section, if the employer carries a policy of workmen's compensation insurance, the term employer shall also include the insurer" came into our law in 1965, undoubtedly because in 1964 the Illinois Supreme Court held the compensation carrier did not share the employer's immunity and sustained a sizeable judgment for an employee. The principal backer of the amendment so testified before the legislative committee considering the bill, without identifying the state where the case arose. He specifically stated his bill was intended to eliminate the possibility of double collection from the carrier. . . .
>
> It is evident to us that the legislative intent in adopting the language quoted was to place the insurer in the same situation as the employer and to eliminate actions of this type.
>
> . . . .
>
> In view of the legislative history and the clear and concise wording of the last sentence of section 48-111, R. R. S. 1943, plaintiff has no cause of action against the insurer. Plaintiff has elected to take under the statute. He has done so with the insurer paying the compensation benefits. He may not now change his course and recover in either tort or contract.

*Pettigrew v. Home Ins. Co.*, 191 Neb. at 315-17, 214 N.W.2d at 922-24.

A factor not at issue in *Pettigrew v. Home Ins. Co.*, but one that is critical to our determination of the availability of the tort

of bad faith against workers' compensation insurers is the availability of a penalty for a delay in the payment of benefits. The Nebraska Workers' Compensation Act does have a penalty provision that is relatively limited in its scope and effect. Neb. Rev. Stat. § 48-125(1) (Reissue 1993) provides in part:

> Except as hereinafter provided, all amounts of compensation payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death; *Provided,* fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability. Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay medical payments subject to such section after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award. Attorney's fees allowed shall not be deducted from the amounts ordered to be paid for medical services nor shall attorney's fees be charged to the medical providers.

The 50-percent penalty provision for delayed payments applies to periodic disability or indemnity benefit payments only and does not apply to medical benefit payments. *Bituminous Casualty Corp. v. Deyle,* 234 Neb. 537, 451 N.W.2d 910 (1990) (because employee's claim involved only unpaid medical expenses, he was not entitled to 50-percent sum authorized by § 48-125(1)).

We acknowledge that the limited penalty (i.e., attorney fees) for unpaid medical benefits provides little deterrence to the bad faith handling of claims by workers' compensation insurers. Nevertheless, the inclusion of an administrative penalty in the Nebraska Workers' Compensation Act is evidence of legislative intent that the issues related to an insurer's handling of claims in bad faith should remain within the exclusive jurisdiction of the act. Under those circumstances, it is the province of the

Legislature, not this court, to strengthen the deterrent effect of administrative penalties within the act as public policy may dictate.

In weighing the importance of the penalty provision contained in our statute to the resolution of the issue at hand, we find the following analysis by Professor Larson to be persuasive regarding the issue of exclusivity.

> The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.
>
> One final factor may be noted that has figured in many of these cases: the presence in the statute of an administrative penalty for the very conduct on which the tort suit is based. A majority of the courts have taken the view that this evidences a legislative intent that the remedy for delay in payments, even vexatious delay, shall remain within the system in the form of some kind of penalty. Several courts, however, have rejected this reasoning, without very convincing rationales. A federal district court, for example, in *Carpentino* [*v. Transport Ins. Co.*, 609 F. Supp. 556 (D. Conn. 1985)], argued that penalties might not fully compensate the plaintiff. Since when, we may ask, has it been necessary for compensation acts to compensate claimants fully? Other courts have correctly pointed out that, although the penalties may in some instances be inadequate, this does not, within the overall nature of the compensation concept, make them invalid. At most, it may be cause to apply to the legislature for a more suitable penalty level.

6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 68.34(c) at 13-230 through 13-231 (1998). We agree.

The Supreme Court of Rhode Island reached the same conclusion in *Cianci v. Nationwide Ins. Co.*, 659 A.2d 662 (R.I. 1995). In *Cianci v. Nationwide Ins. Co.*, the insurer contested its liability for the claimant's liver transplant. The Workers' Compensation Court ordered the insurer to pay for the transplant and

then Cianci brought an action alleging that the insurer's refusal to " 'promptly, properly, and fully' " pay the benefits caused him to suffer severe and permanent injuries, emotional distress, and lost wages. *Id.* at 667.

The court first held that a workers' compensation insurance carrier is entitled to the same protection under the immunity provisions of the compensation act as an employer receives. Cianci argued that his injuries did not arise out of and in the course of his job duties, and therefore, his action was not barred by the exclusivity provisions of the act. The court determined, however, that Rhode Island's compensation act contained a penalty provision for delay in the payment of benefits.

> Such a penalty is evidence of a legislative intent that the remedy for delay in payments should remain in the workers' compensation system . . . .
>
> . . . .
>
> . . . An employee covered under the act has no common-law right of action against the insurer because the act expressly addresses such claims and thus immunizes the carrier from liability under any common-law suit.

*Id.* at 669-70. The court then refused to find an intentional tort exception to the exclusivity provisions of the act for insurers, as an intentional tort exception for employers had previously been rejected. See *Lopes v. G.T.E. Products Corp.*, 560 A.2d 949 (R.I. 1989).

Like the Supreme Court of Rhode Island, this court has also previously held that employers are not liable to employees, outside liability imposed by the Nebraska Workers' Compensation Act, for intentional torts. See *Abbott v. Gould, Inc.*, 232 Neb. 907, 443 N.W.2d 591 (1989). We are not persuaded by Ihm's contention that his reflex sympathetic dystrophy condition did not "aris[e] out of" his work-related injury. Reply brief for appellant at 2. While the alleged tortious conduct of the appellees, in refusing to timely authorize needed medical treatment, may have come after the original injury, the conduct was not independent of the injury. Rather, the alleged tortious acts of the appellees were completely intertwined with the original injury, as their acts related directly to an alleged bad faith delay in authorization of further treatment for the original injury.

Therefore, we hold that the penalty provisions contained in § 48-125(1) exclude the possibility of a common-law bad faith tort claim for damages resulting from delay in either authorization for or payment of medical expenses. Because the Nebraska Workers' Compensation Act is solely a statutory creature, we are not free to create a separate and independent tort claim for alleged acts arising out of a bad faith delay in authorization of any medical treatment that is directly related to the original, compensable injury. Thus, Ihm may not maintain a tort action for bad faith against the appellees because the Nebraska Workers' Compensation Act provides his exclusive remedy, and the district court properly sustained the appellees' demurrers and dismissed the instant cause for lack of subject matter jurisdiction.

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, C.J., participating on briefs.