Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/15/2023 09:07 AM CST

Sandra Lopez, appellant, v. Catholic Charities
of the Archdiocese of Omaha, a Nebraska
nonprofit corporation, appellee.

___ N.W.2d ___

Filed December 15, 2023.    No. S-23-301.

1. **Motions to Dismiss: Rules of the Supreme Court: Workers' Compensation.** As an affirmative defense, workers' compensation exclusivity can be raised in a motion to dismiss for failure to state a claim under Neb. Ct. R. of Pldg. § 6-1112(b)(6).

2. **Motions to Dismiss: Rules of the Supreme Court: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. of Pldg. § 6-1112(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

3. **Motions to Dismiss: Torts: Workers' Compensation: Proof.** For an employee to prevail against a motion to dismiss a tort action against his or her employer, the employee must allege sufficient facts that, if true, would demonstrate the Nebraska Workers' Compensation Act does not apply.

4. **Torts: Workers' Compensation: Statutes.** Under the workers' compensation statutes, employees give up the complete compensation that they might recover under tort law in exchange for no-fault benefits that they quickly receive for most economic losses from work-related injuries.

5. **Statutes: Legislature: Public Policy.** It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed.

Thomas M. White, Amy S. Jorgensen, and Hannah Schweitzer, Senior Certified Law Student, of White & Jorgensen, for appellant.

Heather B. Veik and Jerald L. Rauterkus, of Erickson | Sederstrom, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

The Nebraska Workers' Compensation Act has long been understood to provide the exclusive remedy for at least some injuries suffered by employees at work. When workers' compensation is an employee's exclusive remedy, the employee cannot assert tort theories of recovery against his or her employer in district court. In this case, Sandra Lopez sued her employer in district court, asserting claims of assault and intentional infliction of emotional distress. Her complaint alleged that agents of her employer planned and carried out a realistic active shooter drill at its offices and that Lopez suffered physical and mental injuries as a result. The district court dismissed the suit, concluding that workers' compensation was Lopez' exclusive remedy. Lopez appeals the dismissal and primarily asks us to hold that an employee may pursue tort theories of recovery against his or her employer for injuries suffered in the scope of employment if it is shown that the employer acted with a specific intent to injure the employee. We are unpersuaded by Lopez' arguments and therefore affirm.

## BACKGROUND

*Lopez' Complaint.*

In May 2022, Lopez was employed by Catholic Charities of the Archdiocese of Omaha (Catholic Charities). Her allegations in this case concern an active shooter drill carried out at Catholic Charities' offices at that time.

According to Lopez' complaint, three individuals identified as the executive director, chief of operations, and chief

of community engagement for Catholic Charities planned and carried out the active shooter drill one morning at the office at which Lopez worked. Lopez had no advance notice that a drill was taking place. Instead, Lopez claims that she reacted in fear after hearing loud "bangs" on the door to her office suite and being urged by the chief of community engagement to get out of her office. When Lopez followed others toward the exits, the executive director told her a shooting was taking place. Lopez later heard gunshots and saw a fellow employee lying outside on the ground, apparently dead or mortally wounded, and with what appeared to be blood on her hand. Lopez ran away from the building and toward a nearby shopping plaza. While running away from the building, Lopez jumped off a retaining wall and "jarr[ed]" her back upon landing. Lopez alleged that the chief of operations later told her son that "it was all play acting and a safety drill" and that "'[w]e wanted to see how people reacted.'"

Lopez alleged that she went to counseling the day after the drill and has continued to seek treatment to address fear and depression caused by the above-described events. She also alleged that she injured her back as a result of jumping off the retaining wall and that she continues to receive treatment for that injury as well.

Based on these allegations, Lopez asserted that Catholic Charities was liable for assault and intentional infliction of emotional distress. In support of her assault theory of recovery, Lopez alleged that Catholic Charities had intentionally terrorized her and caused her to fear for her life. Her complaint sought, among other things, damages for both mental and physical injuries, past and future medical expenses, permanent disability, and the loss of earnings and the impairment of future earning capacity.

*Dismissal by District Court.*

Catholic Charities moved to dismiss Lopez' complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) (rule 12(b)(6)). It

asserted that because the Nebraska Workers' Compensation Act (the Act) provided the exclusive remedy for Lopez' injuries, her complaint failed to state a claim upon which relief could be granted.

The district court granted Catholic Charities' motion. In a written order, it found that the Act was Lopez' exclusive remedy. It specifically rejected Lopez' argument that she was entitled to pursue tort theories of recovery in district court because she had alleged intentional torts and that Catholic Charities acted with specific intent to injure her.

Lopez filed a timely appeal, and we moved the case to our docket.

## ASSIGNMENT OF ERROR

Lopez assigns that the district court erred by granting Catholic Charities' motion to dismiss.

## STANDARD OF REVIEW

The district court granted Catholic Charities' rule 12(b)(6) motion to dismiss for failure to state a claim. Although the standard of review for such motions is well-established, we conclude that this is not a case in which we can quickly recite that standard and proceed to apply it. As we will explain, there is some inconsistency in our case law as to whether a motion to dismiss based on a contention that the Act provides the exclusive remedy is an affirmative defense and thus properly raised via rule 12(b)(6) or a matter of subject matter jurisdiction and thus properly raised via Neb. Ct. R. Pldg. § 6-1112(b)(2).

In one case, we specifically described the exclusivity of the Act as an affirmative defense that is subject to waiver and that the employer is obligated to prove. See *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), *overruled on other grounds*, *Hynes v. Hogan*, 251 Neb. 404, 558 N.W.2d 35 (1997), and *disapproved on other grounds*, *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012). In another case decided just 2 years prior,

however, we stated that because the plaintiffs' allegations fell within the ambit of the Act, the district court was "without subject matter jurisdiction in regard to those allegations" and sustained the district court's dismissal on subject matter jurisdiction grounds. See *Abbott v. Gould, Inc.*, 232 Neb. 907, 914, 443 N.W.2d 591, 596 (1989). This inconsistent treatment appears to have continued in subsequent years. See *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013) (finding that the Act provided exclusive remedy and affirming dismissal for failure to state a claim); *Ihm v. Crawford & Co.*, 254 Neb. 818, 580 N.W.2d 115 (1998) (finding that the Act provided exclusive remedy and affirming dismissal for lack of subject matter jurisdiction).

We conclude today that to the extent we have suggested that the doctrine of workers' compensation exclusivity operates as a limitation on the subject matter jurisdiction of district courts to hear common-law tort claims, our language was imprecise. Subject matter jurisdiction refers to the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. See, e.g., *Bleich v. Bleich*, 312 Neb. 962, 981 N.W.2d 801 (2022). Article V, § 9, of the Nebraska Constitution states that "[t]he district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide . . . ." And because a district court's general jurisdiction is conferred by the Nebraska Constitution, the Legislature is without power to take that jurisdiction away. See *Susan L. v. Steven L.*, 273 Neb. 24, 729 N.W.2d 35 (2007).

Given the foregoing, workers' compensation exclusivity cannot function as a limit on the district court's subject matter jurisdiction over common-law tort claims. Article V, § 9, gives the district courts subject matter jurisdiction to decide common-law tort claims. That authority cannot be taken away via statute, and the doctrine of workers' compensation exclusivity arises from statute. See, e.g., *Bennett v. Saint*

*Elizabeth Health Sys.*, 273 Neb. 300, 729 N.W.2d 80 (2007) (identifying statutory sources of workers' compensation exclusivity jurisprudence); *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997) (same).

Although the Legislature lacks the authority to divest district courts of their subject matter jurisdiction over common-law tort claims, the Legislature can create an affirmative defense to such tort claims. We understand workers' compensation exclusivity to be such an affirmative defense. Our conclusion that workers' compensation is an affirmative defense and not a limit on the district court's subject matter jurisdiction is consistent with *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473 (Mo. 2009), a case in which the Missouri Supreme Court resolved its own inconsistent precedent and concluded that workers' compensation exclusivity is an affirmative defense and not a limit on the subject matter jurisdiction conferred on circuit courts by the Missouri Constitution.

[1-3] As an affirmative defense, workers' compensation exclusivity can be raised in a motion to dismiss for failure to state a claim under rule 12(b)(6). See *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005) (holding that defendant can assert affirmative defense in rule 12(b)(6) motion when allegations that are subject of affirmative defense appear on face of complaint). A district court's grant of a motion to dismiss for failure to state a claim under rule 12(b)(6) is reviewed de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020). In *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 6, 834 N.W.2d 236, 243 (2013), we stated that for an employee to withstand an employer's rule 12(b)(6) motion to dismiss based on workers' compensation exclusivity, "the employee must allege sufficient facts that, if true, would demonstrate the Act does not apply."

## ANALYSIS

[4] On a number of occasions we have said that the Act "provides the exclusive remedy by the employee against the employer for *any* injury arising out of and in the course of the employment." See, e.g., *Dutcher v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 405, 416, 979 N.W.2d 245, 253-54 (2022) (internal quotation marks omitted) (emphasis in original). See, also, *Ihm v. Crawford & Co.*, 254 Neb. 818, 821, 580 N.W.2d 115, 118 (1998) ("when an employee sustains an injury that arises out of and in the course of his or her employment and such injury is covered by [the Act], then the employee surrenders his or her right to any other method, form, or amount of compensation"). As noted above, the exclusivity of the workers' compensation remedy is derived from statute. We have recognized that the principle of workers' compensation exclusivity rests on an implicit bargain in which, under the workers' compensation statutes, employees give up the complete compensation that they might recover under tort law in exchange for no-fault benefits that they quickly receive for most economic losses from work-related injuries. See *Dutcher, supra*.

Lopez does not dispute that, in general, the Act provides the exclusive remedy for injuries arising out of and in the course of employment and that an employee may not sue his or her employer in tort for such injuries. She makes three arguments, however, as to why her complaint should not have been dismissed. We address these arguments in the sections below.

*Specific Intent to Injure.*

Lopez' primary argument is that her complaint should not have been dismissed because she has alleged that individuals in leadership positions at Catholic Charities acted with specific intent to injure her. She contends that her complaint is fairly read to allege that those individuals planned the drill with the intention of placing Lopez and other employees in fear and distress and that such facts establish a specific intent

to injure. She asks us to hold that an employee is not limited to a workers' compensation recovery if it is demonstrated that the employer committed intentional torts and acted with a specific intent to injure the employee.

This court has previously declined invitations to recognize an intentional tort exception to the doctrine of workers' compensation exclusivity. In *Abbott v. Gould, Inc.*, 232 Neb. 907, 443 N.W.2d 591 (1989), employees sought to sue their employer in tort based on allegations that the employer intentionally subjected the employees to toxins and concealed from the employees the dangers of such exposure. We affirmed the district court's dismissal based on workers' compensation exclusivity. We reasoned that the purpose of the workers' compensation statute was to do away with common-law remedies and defenses and to give compensation without regard to the employer's fault. We concluded that we would subvert the purpose of the workers' compensation statutes if we were to permit employees to pursue intentional tort claims against their employers outside the workers' compensation system.

Over two decades later, in *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013), we were presented with another case in which a party sought to avoid workers' compensation exclusivity by alleging intentional torts. In that case, an employee's supervisor asked him to enter a grain bin and the employee died of asphyxiation after being engulfed in grain. The employee's estate alleged that the employer intentionally ignored safety regulations, concealed known dangers, and knew that serious injury was substantially certain to occur as a result. We again held that workers' compensation was the exclusive remedy. We first observed that while the employee's estate had alleged that the employer knew its conduct was substantially certain to result in injury, the estate had not alleged that the employer acted with a specific intent to injure. We acknowledged that a minority of jurisdictions had adopted an exception that allows an employer to be sued in tort if the employer knew the

tortious conduct was substantially certain to result in injury, but we declined to adopt such an exception. We explained that such an exception has proven difficult to apply and would be inconsistent with the purposes of the Act.

Perceiving that *Estate of Teague, supra*, did not address cases in which the employer is alleged to have acted with a specific intent to injure the employee, Lopez asks us to hold that an employee may pursue and obtain a tort recovery if he or she can plead and prove the employer acted with such intent. Lopez contends that recognition of such a narrow exception is not only left open by *Estate of Teague, supra*, but also supported by the language of the Act. She points out that the Act provides compensation to employees when injury is caused "by accident." See Neb. Rev. Stat. § 48-101 (Reissue 2021). She submits that when an employer acts with specific intent to injure the employee, that cannot be characterized as an accident. And, Lopez argues, because she has alleged that Catholic Charities acted with specific intent to injure her, the Act does not cover her claims and she is entitled to pursue tort theories in district court.

We disagree with Lopez' argument that if an employer acts with specific intent to injure an employee, the resulting injury cannot be accidental. The Act defines accident as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Neb. Rev. Stat. § 48-151(2) (Reissue 2021). Lopez argues that she has not alleged an accident under this definition because the fear and distress she suffered because of the active shooter drill were not unexpected or unforeseen but, according to her complaint, deliberately planned by agents of Catholic Charities. This argument, however, improperly focuses on whether the injuries were unexpected or unforeseen *to the employer*.

This court long ago concluded that an injury is accidental and thus compensable under workers' compensation

statutes, if it is unexpected or unforeseen *to the employee*. In *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 717, 53 N.W.2d 203, 206 (1952), this court, citing cases from other jurisdictions and a workers' compensation treatise of that era, said that "an assault is an accident within the meaning of [the Act] *when from the point of view of the workman who suffers from it*[,] it is unexpected and without design on his part although intentionally caused by another" (internal quotation marks omitted) (emphasis supplied). See, also, *Reserve Life Insurance Company v. Hosey*, 208 Va. 568, 571, 159 S.E.2d 633, 635 (1968) (noting acceptance of definition of accident as event that is "unusual and not expected by the person to whom it happens") (internal quotation marks omitted); *Klein v. New York Times Co.*, 317 N.J. Super. 41, 721 A.2d 29 (1998) (holding that employee who punched electrical box in anger was not injured by accident because employee should have expected injury). Consistent with that understanding, in subsequent cases, we have analyzed whether injuries were accidental and thus compensable for purposes of the Act by determining whether they were unexpected or unforeseen to the employee. See, e.g., *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000).

Indeed, our decision in *Estate of Teague, supra*, makes sense only if the question of whether the employee's death was unexpected or unforeseen is viewed from the perspective of the employee. After all, the employee's estate in *Estate of Teague* alleged that the employer was substantially certain that serious injury would befall the employee. If the employer was substantially certain injury would occur, the injury could not fairly be described as unexpected or unforeseen if viewed from the employer's perspective. And, yet, we affirmed the district court's determination that the death was a compensable accident for purposes of the Act. For these reasons, we disagree with Lopez that the accidental injury requirement in the Act supports her argument that workers' compensation

exclusivity should not apply when an employer acts with specific intent to injure an employee.

In addition to her argument based on the accidental injury requirement, Lopez also asks us to follow the lead of other jurisdictions that have recognized intentional tort exceptions to workers' compensation exclusivity provisions. Although Lopez is correct that many jurisdictions recognize some form of intentional tort exception to workers' compensation exclusivity, many others do not. See 9 Arthur Larson et al., Larson's Workers' Compensation Law § 103.01 (2017).

Those jurisdictions that have recognized intentional tort exceptions have set forth different rationales for doing so. Some states, like South Dakota, have specific legislative provisions exempting intentional torts from their statutes that provide for workers' compensation exclusivity. See, e.g., *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 371 (S.D. 1991) (citing "SDCL 62-3-2" as basis for intentional tort exception to workers' compensation exclusivity). Other states have recognized an intentional tort exception without specific legislative language. The Indiana Supreme Court, for example, in a decision Lopez relies upon, held that its exclusivity provision did not apply to intentional torts based on its conclusion that intentional torts were not accidental and therefore not even covered by workers' compensation. See *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271 (Ind. 1994). Other states have continued to hold that injuries inflicted intentionally are accidental and thus compensable under workers' compensation statutes if unforeseen to the injured party, but have nonetheless recognized an intentional tort exception to exclusivity based on a determination that the employer should not be able to assert that the injury was accidental if he or she intended to cause the injuries at issue. See, e.g., *Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill. 2d 455, 564 N.E.2d 1222, 151 Ill. Dec. 560 (1990). See, also, 9 Larson et al., *supra*, § 103.01.

Having surveyed intentional tort exceptions recognized by other jurisdictions, we are not persuaded to adopt a similar

exception here. Unlike South Dakota's workers' compensation statute, the Act does not contain an explicit provision exempting intentional torts from workers' compensation exclusivity. And we are not convinced that the rationales for recognizing intentional tort exceptions in states without specific statutory language are consistent with the Act and our precedent. As we have discussed, under our precedent, an injury occurs by accident and is therefore compensable under the Act if it is unexpected or unforeseen to the person suffering the injury. Furthermore, the Act provides that employees covered by the Act "surrender . . . their rights to any other method, form, or amount of compensation or determination thereof." Neb. Rev. Stat. § 48-111 (Reissue 2021). See, also, *Ihm v. Crawford & Co.*, 254 Neb. 818, 580 N.W.2d 115 (1998). We see no language in the Act that would support a rule whereby injuries occurring as a result of an employer's specific intent to injure an employee are exempted from the employee's surrender of rights to other forms of compensation but all other injuries are not.

For these reasons, we find that Lopez' allegations that agents of Catholic Charities acted with specific intent to injure her did not save her complaint from dismissal on workers' compensation exclusivity grounds.

### *Article I, § 13, of Nebraska Constitution.*

Lopez next argues that she should be permitted to pursue her tort claims in district court because she will be denied any recovery under the Act. Lopez contends that this complete denial of any recovery violates article I, § 13, of the Nebraska Constitution, specifically its language providing that "[a]ll courts shall be open, and every person, for any injury done him or her in his or her lands, goods, person, or reputation, shall have a remedy by due course of law . . . ."

In support of her position that she will not be able to obtain any recovery for her injuries under the Act, Lopez relies on *Zach v. Nebraska State Patrol*, 273 Neb. 1, 727 N.W.2d

206 (2007). In that case, a state trooper died as a result of a self-inflicted gunshot wound and his surviving spouse and children sought workers' compensation benefits. Their theory was that the trooper suffered a compensable accident when his learning of the consequences of a work-related error caused changes in his brain that prompted his suicide. We held that the petition did not state a claim for accidental injury. We stated that "an injury caused by a mental stimulus does not meet the requirement in § 48-151(4) that a compensable accidental injury involve 'violence to the physical structure of the body.'" *Zach, supra*, 273 Neb. at 8-9, 727 N.W.2d at 212. But, see, Neb. Rev. Stat. § 48-101.01(2) (Reissue 2021) (adopted after *Zach* and providing circumstances under which "[p]ersonal injury includes mental injuries and mental illness unaccompanied by physical injury for an employee who is a first responder" or similar). Lopez argues that under *Zach, supra*, the injuries to her back are not compensable under the Act because they were caused by a mental stimulus.

It is not clear to us that Lopez is correct that the rule recognized in *Zach, supra*, stands in the way of her receiving compensation under the Act. But we find it unnecessary to resolve that question in this appeal. Even assuming that Lopez is correct that she will not be able to obtain compensation under the Act, we find that Lopez has not complied with the procedural requirements for us to consider her constitutional argument.

We understand Lopez to contend that the Act is unconstitutional to the extent it precludes her from suing in tort yet provides no compensation under the rule announced in *Zach, supra*. This is a challenge to the constitutionality of the Act and thus implicates Neb. Ct. R. App. P. § 2-109(E) (rev. 2022). See *State v. Denton*, 307 Neb. 400, 949 N.W.2d 344 (2020). Section 2-109(E) requires parties presenting a case involving the federal or state constitutionality of a statute to file and serve notice thereof by separate written notice or in a petition to bypass and to provide the Attorney General with a

copy of its brief if the Attorney General is not already a party to the case. See *State v. Catlin*, 308 Neb. 294, 953 N.W.2d 563 (2021). As we have explained, § 2-109(E), among other things, ensures that the Attorney General can carry out the duty to defend duly adopted statutory enactments that are not unconstitutional. See *Denton, supra*. Without strict compliance with § 2-109(E), this court will not address a constitutional challenge to a statute. *Denton, supra.*

Our record contains no indication that Lopez complied with § 2-109(E) in this case. We thus cannot consider her argument that dismissal of her complaint pursuant to the Act violated article I, § 13.

*Public Policy.*

Finally, Lopez argues that the dismissal of her complaint violates public policy. Lopez asserts that dismissal of complaints like hers on workers' compensation exclusivity grounds allows employers to intentionally frighten and cause injuries to their employees and escape liability. This, Lopez contends, violates public policy.

[5] Again, it is not clear to us that Lopez is precluded from obtaining any recovery in this case. In any event, we need not answer that question to address her argument. As we often recognize, it is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state. *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019). Lopez has not, however, identified any particular statute or other source of recognized legal authority that precludes dismissal in this case. Instead, she appears to ask us to reverse the district court's dismissal based on a determination that this outcome is unfair or creates bad incentives for employers.

In response to this argument, we find guidance from the Iowa Supreme Court. That court has said that public policy "is not determined by this court's generalized concepts of fairness and justice or our determination of what might be most just

in a particular case." *Claude v. Guaranty Nat. Ins. Co.*, 679 N.W.2d 659, 663 (Iowa 2004) (internal quotation marks omitted). Because Lopez has not identified any particular statute or other source of recognized legal authority that precludes dismissal here, we find her public policy argument lacks merit.

*Nonphysical Injuries.*

For the reasons set forth above, we find that each of Lopez' arguments as to why the district court erred by dismissing her complaint lacks merit. Prior to concluding, we note that we are aware that a number of courts around the country have held that when an employee sues his or her employer and asserts solely nonphysical injuries, workers' compensation is not the exclusive remedy. See 9 Arthur Larson et al., Larson's Workers' Compensation Law § 104.01 (2017); 1 John P. Ludington et al., Modern Workers Compensation § 102:4 at 8 (Matthew J. Canavan & Donna T. Rogers eds., 2016) ("[e]xclusivity applies only to personal injury or death liability, not to other types of tort liability"). We are further aware that in cases where an employee seeks recovery of both nonphysical and physical injuries, a number of courts have followed the suggestion of a leading commentator and have found that workers' compensation is the exclusive remedy in such cases only when the "essence of the tort" is physical. See 9 Larson et al., *supra*, § 104.05[1] at 104-21.

In this case, although Lopez clearly alleged that she had suffered some nonphysical injuries, she made no argument that she should be allowed to pursue her tort claims in district court because she asserted only nonphysical injuries. Such an argument was presumably unavailable to her as her complaint also alleged injuries to her back. Neither did Lopez argue that she should be allowed to pursue her tort claims because, although she claimed both physical and nonphysical injuries, the essence of her claims were nonphysical. Instead, she made only the arguments we have addressed and rejected above.

Because Lopez did not attempt to avoid dismissal based on the principles set forth above, our decision today should not be read to address whether and how the doctrine of workers' compensation exclusivity applies to nonphysical injury torts.

## CONCLUSION

Because we are not persuaded by Lopez' arguments that the district court erred in dismissing her complaint on workers' compensation exclusivity grounds, we affirm.

AFFIRMED.