BARBARA D. GRANDT, APPELLANT, v. DOUGLAS COUNTY, NEBRASKA, A POLITICAL SUBDIVISION, APPELLEE.

705 N.W.2d 600

Filed November 15, 2005.   No. A-05-114.

James F. Fenlon, P.C., for appellant.

Stuart J. Dornan, Douglas County Attorney, and Bernard J. Monbouquette for appellee.

SIEVERS, CARLSON, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Barbara D. Grandt appeals from the order of the Nebraska Workers' Compensation Court review panel affirming the decision of the trial court. We are confronted with the question of whether a trial court, if it has not been called upon to determine loss of earning power until after completion of vocational rehabilitation, must disregard the reduction in loss of earning power

resulting from successful vocational rehabilitation and calculate continuing benefits upon the loss of earning power as it existed immediately upon attainment of maximum medical improvement (MMI). Because we conclude that the trial court may consider the full circumstances existing at trial, we affirm.

## BACKGROUND

The relevant facts are not in dispute. On November 8, 1999, when Grandt was employed by Douglas County (Douglas) as a nurse, Grandt was attacked by a patient and suffered back injuries. Douglas recognized that Grandt had suffered a work-related injury and, without any proceedings before the Workers' Compensation Court, began making payments to Grandt in relation to her claim for workers' compensation benefits. While those payments were ongoing, Grandt's primary treating physician opined that Grandt had reached MMI as of July 24, 2000.

During periods between November 9, 1999, and November 23, 2002, Douglas paid Grandt permanent partial disability (PPD) benefits based on a 40-percent loss of earning power. On December 6, 2001, shortly after Grandt began a vocational rehabilitation program, Gail Leonhardt, the vocational rehabilitation counselor whom the parties had agreed to engage, rendered an opinion regarding loss of earning power. Leonhardt's report stated that a vocational rehabilitation plan had been submitted and that Grandt was participating in an associate degree program in substance abuse counseling, but that

> [a]s per the request, decided upon as per agreement of [counsel for both parties], an earning capacity assessment as per Gibson v. Kurt Mfg., [255 Neb. 255, 583 N.W.2d 767 (1998), was] being conducted, considering [Grandt's] loss of earning capacity as of the date she reached [MMI], prior to undergoing any vocational rehabilitation as a result of this injury.

Leonhardt found that Grandt had sustained a 35- to 45-percent loss of earning power as of the date of MMI.

On August 17, 2002, Grandt completed the vocational reha-bilitation plan, through which she obtained an associate degree in substance abuse counseling. In an "update" of Grandt's loss of earning power requested by Douglas, Leonhardt noted that his

previous report had not considered "completed future vocational rehabilitation" and found that Grandt's loss of earning power was "reduced" to 25 to 35 percent upon completion of the vocational rehabilitation plan because Grandt was capable of performing work in the field of substance abuse counseling. Commencing November 24, Douglas unilaterally reduced Grandt's PPD benefits, basing subsequent payments on a 25-percent loss of earning power.

In a petition filed on March 13, 2003, after the vocational rehabilitation training had been completed and Douglas had reduced Grandt's PPD benefits, Grandt requested a hearing to address that reduction. At trial, the parties presented evidence, consisting primarily of a written stipulation and related exhibits. In its subsequent written decision, the trial court found that Grandt had sustained "a prevocational rehabilitation loss of earning capacity of 40 percent and a post vocational rehabilitation loss in earning capacity of 30 percent." The trial court then stated the respective rates of compensation to which each loss of earning power percentage "would entitle" Grandt. The trial court ordered:

> [Douglas] is entitled to "compute" [Grandt's] loss in earning capacity at the post vocational rehabilitation amount of 30 percent and that [Douglas] shall continue to pay a 30 percent loss in earning capacity . . . for the period of time set forth in [the parties' stipulation] and from and including November 24, 2002 to the date of hearing of November 20, 2003 and continuing for a period of time not to exceed 300 weeks.

While the order perhaps lacks some precision in that Douglas unilaterally reduced Grandt's PPD benefits based upon a 25-percent loss of earning power rather than 30 percent, we conclude that the order intended to approve the payments based upon a 40-percent loss prior to November 24, 2002, and upon a 30-percent loss from and after that date. Grandt appealed to the review panel, assigning the same errors she assigned in this court. The review panel summarily affirmed, with one judge dissenting and one judge in the majority responding to the dissent. Grandt now appeals to this court.

## ASSIGNMENTS OF ERROR

Grandt alleges that the trial court erred in (1) finding that she had two different losses of earning power and (2) finding that her loss of earning power could be "re-determined" after she had completed vocational rehabilitation.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Madlock v. Square D Co.*, 269 Neb. 675, 695 N.W.2d 412 (2005).

## ANALYSIS

*Loss of Earning Power After Vocational Rehabilitation.*

We choose to first address Grandt's second assignment of error, asserting that loss of earning power cannot be "re-determined" after completion of vocational rehabilitation. The simple answer to this assertion is that there has been only one determination by the trial court, made in response to a petition filed after completion of vocational rehabilitation and long after Grandt attained MMI. However, Grandt's argument makes it clear that this assignment is intended to address the date for determination of loss of earning power.

■ Grandt contends that her loss of earning power must be determined as of July 24, 2000, the date she reached MMI, and not as of her completion of vocational rehabilitation. Loss of earning power and employability are the bases for compensation for PPD to the body as a whole. See *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989). Neb. Rev. Stat. § 48-121(2) (Reissue 2004) provides for awards of PPD benefits, and states:

>For disability partial in character, except the particular cases [of loss or loss of use of specified members], the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter . . . . This compensation shall be paid during the period of such partial disability but not beyond three hundred weeks. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this subdivision shall be reduced by the number of weeks during which compensation was paid for such total disability.

Grandt argues that § 48-121(2) does not provide for a reduction of PPD benefits following completion of vocational rehabilitation and that, therefore, the workers' compensation court, as a tribunal of limited and special jurisdiction, does not have authority to change the rate of benefits at such time. However, § 48-121(2) requires only that loss of earning power be calculated after the injury, and the period following vocational rehabilitation fits within that timeframe.

The Nebraska appellate courts have not confronted this precise situation, in which no determination of loss of earning power is sought before the Workers' Compensation Court until after completion of vocational rehabilitation. While it appears that in *Clemco Fabricators v. Becker*, 62 S.W.3d 396 (Ky. 2001), another state's high court has addressed the question, we conclude that Nebraska case law precludes us from using that court's rationale. The *Clemco* court relied on a statute which allowed for the re-opening of an award on the motion of a party or on the administrative law judge's motion where objective medical evidence showed a worsening of impairment due to a condition caused by the compensable injury. In effect, the *Clemco* court treated the matter as both an initial claim and a reopening. We believe that the Nebraska Supreme Court, in *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998), definitively rejected the contention that the Nebraska statute concerning modification of workers' compensation awards can support a reduction of an award based on the ground that vocational rehabilitation was successful in decreasing a claimant's loss of earning power. In the case before us, however, we are confronted by an initial determination by the

lower court, and Douglas has not sought to invoke the Nebraska statute concerning modification of an award. Thus, the real question that we must answer is, What is the proper time for determination of loss of earning power?

Before we turn to a discussion of the Nebraska case law upon which the parties rely in disputing the answer to this question, we note some general principles. In an ordinary tort action, the principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as that person would have been had there been no injury, that is, to compensate the person for the injury actually sustained. See *Keitges v. VanDermeulen*, 240 Neb. 580, 483 N.W.2d 137 (1992). In that context, the time for assessing damages concerning an impairment, loss, or diminution of future earning power is at the time of trial. *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988). The injured party is not required to postpone the right to recover damages for such injuries until there is either full recovery, surgery, exhaustion of possible therapy, or treatment, although the party may choose to do so. *Lake v. Southwick*, 188 Neb. 533, 198 N.W.2d 319 (1972).

The overall purpose of the Nebraska Workers' Compensation Act (Act), on the other hand, is to provide benefits for employees who are injured on the job, and the terms of the Act are to be broadly construed to accomplish the beneficent purposes of the Act. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005). Within that general goal, one purpose of the Act is to compensate an employee for the loss of his or her earning power. See *Warner v. State*, 190 Neb. 643, 211 N.W.2d 408 (1973). While this purpose is similar to the purpose of recompense for future loss of earning capacity in a tort action, the right to and amount of recovery in workers' compensation proceedings are purely statutory. *Oham v. Aaron Corp.*, 222 Neb. 28, 382 N.W.2d 12 (1986). The Act creates rights which did not exist at common law, and the Legislature may place such restrictions thereon as it sees fit. *University of Nebraska at Omaha v. Paustian*, 190 Neb. 840, 212 N.W.2d 704 (1973).

While § 48-121(2) does not explicitly answer the precise question before us, Grandt contends that Nebraska Supreme Court precedent compels a result contrary to that reached by the

trial court and the majority of the review panel. Grandt relies on *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998), and *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000).

In *Gibson*, the trial court awarded Michael Gibson vocational rehabilitation benefits but declined to determine loss of earning power until after Gibson had completed vocational rehabilitation. The trial court stated that if, after vocational rehabilitation, the parties could not agree on Gibson's loss of earning power, either party could apply for further hearing. The employer appealed, and Gibson cross-appealed. The review panel determined that because Gibson had attained MMI by the time of trial and had received an impairment rating with restrictions, the trial court was clearly wrong in declining to assess Gibson's loss of earning power. On appeal, this court reversed the review panel's order, in part, determining that Gibson was entitled to vocational rehabilitation and that where the claimant is awarded vocational rehabilitation, the trial court should postpone a determination of loss of earning power until after completion of that rehabilitation.

On further appeal, the Nebraska Supreme Court in *Gibson* reversed this court's order, affirmed the review panel's order, and stated:

> [U]pon a determination that Gibson had reached [MMI], absent a valid reason for not making such a determination, the trial judge was obligated to make a determination as to Gibson's loss of earning power. The fact that vocational rehabilitation may reduce an employee's loss of earning power is not a valid reason for postponing a determination of such loss. To hold otherwise would impose an unfair hardship on employees with [PPD] to the body as a whole who have been granted vocational rehabilitation. . . .
>
> . . . It is the intent of the Act that the employer pay [PPD] benefits as determined, if any, as soon as possible after [MMI] has been reached and that the employer, regardless of the employee's ability to increase his or her earning power through vocational rehabilitation, must continue such payment during the limited period of time provided by the Act [in § 48-121(2)] unless the requirements of

[Neb. Rev. Stat.] § 48-141 [(Reissue 1993)] or [Neb. Rev. Stat.] § 48-185 [(Reissue 1993) (providing for appeal after review)] have been met.

255 Neb. at 265-66, 583 N.W.2d at 773.

■ In *Collins v. General Casualty, supra*, the trial court found that Scott Collins had sustained a compensable injury and awarded benefits, including vocational rehabilitation. The trial court estimated that Collins' loss of earning power would be 5 percent after successful completion of vocational rehabilitation. The review panel affirmed, but determined that the trial court had erred in estimating Collins' loss of earning power. The Nebraska Supreme Court affirmed the review panel's order, holding that because Collins had reached MMI, the trial court was obligated to determine his loss of earning power and had erred in speculating about the possible result of vocational rehabilitation when determining his loss of earning power.

Grandt contends that no language in *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998), or *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000), allows the trial court to find that completion of vocational rehabilitation has reduced the claimant's loss of earning power. However, both cases are distinguishable from the case at hand.

First, in *Gibson* and *Collins*, trial occurred before the claimant completed vocational rehabilitation; whereas, in the case before us, trial was held after Grandt completed vocational rehabilitation. Unlike the situations in *Gibson* and *Collins*, the trial court in the instant case did not postpone a determination of loss of earning power or speculate about it. Rather, the trial court in this case made a loss of earning power determination based on all of the evidence available to it at the time of trial.

Second, Grandt received compensation for loss of earning power during the period between the dates of MMI and completion of vocational rehabilitation. This alleviates the principal concern expressed by the Nebraska Supreme Court in *Gibson*—that despite the trial judge's finding that Gibson had suffered a substantial loss of earning power, by deferring determination of the extent of loss until completion of vocational rehabilitation, the judge effectively denied Gibson any compensation for loss of earning power until completion of all the appeals. In the

instant case, the compensation Grandt received for loss of earning power during the full period of time between MMI and completion of vocational rehabilitation was calculated without any regard to the potential effect of the pending or future vocational rehabilitation. Also of note is the fact that Grandt received temporary total disability benefits while completing her vocational rehabilitation—again alleviating the *Gibson* court's concern that the injured worker would be without benefits during vocational rehabilitation.

Grandt also argues that the language of the court's opinion in *Gibson*, which we quoted at length above, dictates that loss of earning power must be determined as of the date of MMI without regard to the time at which the compensation court is called upon to make that determination. Grandt asserts that because the Legislature has not amended § 48-121(2) or Neb. Rev. Stat. § 48-141 (Reissue 2004) to address the timing of the determination of loss of earning power, this court must presume that the Legislature has acquiesced in the interpretation of those statutes contained in *Gibson*. However, as discussed above, due to factual differences, the holding in *Gibson* does not apply to the case at hand. In the case before us, the compensation court made a determination of Grandt's loss of earning power as soon after Grandt attained MMI as the court was called upon to make that determination.

We also observe that in *Collins v. General Casualty*, 258 Neb. 852, 858, 606 N.W.2d 93, 98 (2000), the Nebraska Supreme Court stated that "since Collins had reached [MMI], the trial judge was obligated to determine his loss of earning power, and . . . the trial judge erred in speculating what would be the result of the vocational rehabilitation when determining loss of earning capacity." We find it significant that the Supreme Court addressed the issue merely as a problem of speculation. This implies that if the vocational rehabilitation had been completed, then the trial court properly could have considered the results. In the instant case, where the vocational rehabilitation was completed before the trial court was called upon to determine the loss of earning power, the implication from *Collins* supports the trial court's determination of loss of earning power as of the time that Douglas reduced Grandt's benefit.

This result provides Grandt with the prompt payment of benefits and fully recognizes her greater loss of earning power between MMI and completion of vocational rehabilitation—which seems to us to be fully consistent with the purposes of the Act set forth above.

*Multiple Losses of Earning Power.*

Grandt's other assignment of error alleges that the trial court erred in finding that she had sustained two different losses of earning power. This assignment of error does not accurately reflect the trial court's award.

As we have discussed above at some length, the trial court merely determined, as soon after Grandt reached MMI as the court was called upon to make a determination, the extent of Grandt's loss of earning power. Grandt's assignment of error on this matter relies upon her earlier argument that the trial court was required to retroactively look to the extent of loss of earning power as of the date of MMI and disregard the documented change in loss of earning power flowing from completion of vocational rehabilitation. For the same reasons that we have already rejected that argument, we conclude that this assignment of error also lacks merit.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in considering the beneficial effects of vocational rehabilitation on Grandt's loss of earning power, and we affirm.

AFFIRMED.