CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

Estate of Joseph James Teague, deceased, by and through his Personal Representative, Joani M. Martinosky, appellant, v. Crossroads Cooperative Association, a Nebraska corporation, appellee.

___ N.W.2d ___

Filed May 31, 2013.    No. S-12-702.

1. **Judgments: Statutes: Appeal and Error.** Concerning questions of law and statutory interpretation, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
2. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
3. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
4. **Workers' Compensation.** The Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an accidental injury arising out of and in the course of employment.
5. **Motions to Dismiss: Torts: Workers' Compensation: Proof.** For an employee to prevail against a motion to dismiss a tort action against his or her employer, the employee must allege sufficient facts that, if true, would demonstrate the Nebraska Workers' Compensation Act does not apply.
6. **Workers' Compensation.** The primary object of the Nebraska Workers' Compensation Act is to do away with the inadequacies and defects of the common-law remedies; to destroy the common-law defenses; and, in the employments affected, to give compensation, regardless of the fault of the employer.
7. **Actions: Motions to Dismiss.** For purposes of a motion to dismiss, a court is not obliged to accept as true a legal conclusion couched as a factual allegation, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.
8. **Workers' Compensation.** Delay, cost, and uncertainty are contrary to the underlying purposes of the Nebraska Workers' Compensation Act.
9. **Workers' Compensation: Legislature: Intent: Employer and Employee: Time.** The Nebraska Workers' Compensation Act was intended by the Legislature to simplify legal proceedings and to bring about a speedy settlement of disputes

(1)

between the injured employee and the employer by taking the place of expensive court actions with tedious delays and technicalities.

10. **Workers' Compensation: Jurisdiction: Legislature.** As a statutorily created court, it is the role of the Legislature to determine what acts fall within the Workers' Compensation Court's exclusive jurisdiction.

11. **Workers' Compensation: Jurisdiction: Intent.** Absent an amendment to the Nebraska Workers' Compensation Act, an appellate court will not judicially create a "substantially certain" exception from the act's intended exclusive jurisdiction over workplace injuries.

12. **Motions to Dismiss: Records.** Even novel issues may be determined on a motion to dismiss where the dispute is not as to the underlying facts but as to the interpretation of the law, and development of the record will not aid in the resolution of the issues.

13. **Equal Protection.** The Equal Protection Clause does not forbid classifications; it simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike.

14. **Special Legislation.** A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.

15. **Workers' Compensation: Employer and Employee: Legislature.** Employers and employees stand in different relations to the common undertaking; it was rational for the Legislature to recognize this fact when determining employers' and employees' respective rights and liabilities under the workers' compensation system.

16. **Workers' Compensation: Negligence: Legislature.** It was not arbitrary for the Legislature to determine coverage under the Nebraska Workers' Compensation Act based on whose willful negligence caused the injury.

17. **Torts: Employer and Employee: Legislature.** The Legislature made a rational distinction between intentional tort victims who are employees and intentional tort victims who are not employees. Workers' compensation law reflects a policy choice that employers bear the costs of the employees' work-related injuries, because employers are in the best position to avoid the risk of loss by improving workplace safety.

Appeal from the District Court for Cheyenne County: Derek C. Weimer, Judge. Affirmed.

R. Kevin O'Donnell and Michael D. Samuelson, of McGinley, O'Donnell, Reynolds & Korth, P.C., L.L.O., for appellant.

Steven W. Olsen and John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ., and Riedmann, Judge.

McCormack, J.

# I. NATURE OF CASE

The employer in this case willfully violated safety regulations and thereby caused the tragic death of one of its employees. The employee's estate brought tort actions against the employer in district court rather than seeking compensation under the Nebraska Workers' Compensation Act (the Act).[1] This it cannot do. Despite the egregiousness of the employer's conduct, the injury was still an "accident" as defined by the Act. The Act does not thereby unconstitutionally discriminate between employees and nonemployees or employee victims of employer willful negligence and employee victims of their own willful negligence. We therefore affirm the district court's dismissal of the estate's complaint.

# II. BACKGROUND

Joseph James Teague worked for Crossroads Cooperative Association (Crossroads). Teague was asked by his supervisor to enter a grain bin and shovel grain into the center of the bin's conical base in order to facilitate removal of grain from the bin. Teague died of asphyxiation after being engulfed in grain.

The grain bin was approximately 58 feet tall and 21½ feet in diameter. The depth of the grain in the bin was high enough to present an engulfment hazard and was higher on the sides than in the middle, such that it could slide onto employees. In violation of Occupational Safety and Health Administration (OSHA) regulations, Teague's supervisor sent Teague into the bin without a lifeline or any other equipment that could prevent engulfment past Teague's waist. The Crossroads facility where Teague worked also lacked adequate equipment for a rescue operation if engulfment were to occur, also in violation of OSHA regulations.

In accordance with Crossroads' customary practices, Teague's supervisor kept the auger running in the bin in order to facilitate extraction of the grain. This was in clear violation

---

[1] Neb. Rev. Stat. § 48-101 et seq. (Reissue 2004 & Cum. Supp. 2006).

of OSHA regulations and created movement of the grain, increasing the engulfment hazard.

In further violation of OSHA regulations mandating that a supervisor maintain communication with an employee in a grain bin at all times, Teague's supervisor stepped momentarily away from his observation of Teague in the bin. When the supervisor returned, Teague was dead.

OSHA assessed civil penalties against Crossroads. In addition, Crossroads pleaded guilty to the criminal charge of willfully violating OSHA regulations by knowingly permitting an employee to enter a grain bin in violation of safety standards requiring that an auger system be turned off, locked out, and tagged while an employee is in a grain bin.

The personal representative of Teague's estate (Estate) brought this action in the district court against Crossroads for wrongful death and assault and battery, and for a declaratory judgment that either the Act does not apply or, alternatively, that it is unconstitutional on its face and as applied.

The district court granted Crossroads' motion to dismiss for failure to state a claim. The district court relied on *Abbott v. Gould, Inc.*,[2] wherein we held that the employer's knowing misrepresentation concerning the hazards of the job did not take the employer's conduct outside the exclusivity of the Act. The court found that the facts alleged in the Estate's petition, even if true, would not constitute "'willful and unprovoked physical aggression'" by an employee, officer, or director of Crossroads. In other words, the court found that the Estate's allegations of assault and battery were legal conclusions unsupported by the facts alleged. The court concluded that the incident resulting in Teague's death was an "accident" under the Act,[3] and the court found no merit to the Estate's claims that the Act is unconstitutional. The Estate appeals.

### III. ASSIGNMENTS OF ERROR

The Estate makes the following assignments of error: (1) The district court erred in sustaining Crossroads' motion to

---

[2] *Abbott v. Gould, Inc.*, 232 Neb. 907, 443 N.W.2d 591 (1989).

[3] See §§ 48-101 and 48-111.

dismiss for failure to state a claim upon which relief can be granted; (2) the district court erred in determining that the Act applies to this case; (3) the district court erred in failing to recognize an exception to the exclusivity provisions of the Act in light of the facts of this case; (4) the district court erred in failing to conclude that by applying the exclusivity rule of the Act to the Estate, the Act improperly deprives it, and other similar individuals, of due process, equal protection, and a right to trial by jury and that the Act imposes special legislation; (5) the district court erred in dismissing the Estate's constitutional claims because the ultimate success of constitutional arguments are not a proper issue under a motion to dismiss pursuant to the Nebraska Court Rules of Pleading in Civil Cases.[4]

## IV. STANDARD OF REVIEW

[1] Concerning questions of law and statutory interpretation, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[5]

[2] A district court's grant of a motion to dismiss is reviewed de novo.[6]

[3] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[7]

## V. ANALYSIS

The Estate asserts that because it alleged intentional tortious conduct, Teague's death was not an "accident" covered by the exclusive jurisdiction of the Workers' Compensation Court. Alternatively, the Estate argues that the Act is unconstitutional

---

[4] Neb. Ct. R. Pldg. § 6-1112(b)(6).

[5] *Harsh International v. Monfort Indus.*, 266 Neb. 82, 622 N.W.2d 574 (2003).

[6] *Walentine, O'Toole v. Midwest Neurosurgery*, 285 Neb. 80, 825 N.W.2d 425 (2013).

[7] *Id.*

insofar as it distinguishes between willful negligence of employers and willful negligence of employees, and between employed intentional tort victims and unemployed intentional tort victims. The Estate also contends that dismissal under § 6-1112(b)(6) is generally inappropriate when a complaint alleges constitutional issues. We find no merit to these contentions.

### 1. WAS INJURY CAUSED BY "ACCIDENT" UNDER ACT?

[4,5] The Act is an employee's exclusive remedy against an employer for an accidental injury arising out of and in the course of employment.[8] The employer, by having liability imposed by the Act without fault, receives in return relief from tort actions.[9] Thus, for an employee to prevail against a motion to dismiss a tort action against his or her employer, the employee must allege sufficient facts that, if true, would demonstrate the Act does not apply.[10] The Estate's complaint failed to make sufficient allegations that, if true, would state a cause of action outside the exclusive jurisdiction of the Act.

The Estate's complaint alleged Crossroads committed intentional torts and criminal OSHA violations that were certain or substantially certain to result in Teague's injury or death. OSHA regulations explicitly state that they do not supersede or in any way affect the workers' compensation laws of the various states.[11] The Estate argues, however, that because of the willfulness of Crossroads' violations of the OSHA regulations, Teague's death was not the result of an "accident" under the Act. Thus, the Estate argues that the district court erred in dismissing the complaint.

---

[8] See, *Ihm v. Crawford & Co.*, 254 Neb. 818, 580 N.W.2d 115 (1998); *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303 (1975); *Memorial Hosp. of Dodge Cty. v. Porter*, 4 Neb. App. 716, 548 N.W.2d 361 (1996).

[9] *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243 (1986).

[10] See, *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 280 Neb. 997, 792 N.W.2d 484 (2011); *Jones v. Rossbach Coal Co.*, 130 Neb. 302, 264 N.W. 877 (1936).

[11] 29 U.S.C. § 653(b)(4) (2006).

But this court has long held that there is no intentional tort exception to the Act.[12] In pertinent part, the Act defines an "accident" as "an unexpected or unforeseen injury happening suddenly and violently, *with or without human fault*."[13] In *Abbott*, we affirmed the dismissal of the employees' consolidated complaints in the district court alleging common-law actions stemming from numerous egregious intentional acts by the employer.[14] The employees' complaints alleged that their employer had intentionally subjected the employees to contact with and ingestion of particles and fumes known to be injurious to human health; had intentionally failed to provide adequate safeguards at the worksite; had intentionally hidden the effects of the toxic exposures from the employees; and that, as part of a coverup, had intentionally misrepresented that certain drugs would prevent any harmful effects of the exposure—but in fact, such drugs caused independent harm. To do anything other than affirm the dismissal of the employees' complaints, we explained, would subvert the primary object of the Act.

[6] The primary object of the Act, we said, is "'to do away with the inadequacies and defects of the common-law remedies, to destroy the common-law defenses, and, in the employments affected, to give compensation, *regardless of the fault of the employer*.'"[15] Furthermore, an intentional tort exception would re-focus the inquiry from whether it arose out of and in the course of employment to the state of mind of the employer and employee.[16] We disapproved even of the notion that deliberate acts with specific intent to injure the employee could fall outside the Act.[17] In *Harsh International v. Monfort Indus.*,[18] a third-party contribution action, we reaffirmed that

---

[12] See *Abbott v. Gould, Inc.*, *supra* note 2.

[13] § 48-151(2) (emphasis supplied).

[14] *Abbott v. Gould, Inc.*, *supra* note 2.

[15] *Id.* at 913, 443 N.W.2d at 595 (emphasis in original).

[16] *Abbott v. Gould, Inc.*, *supra* note 2.

[17] *Id.*

[18] *Harsh International v. Monfort Indus.*, *supra* note 5.

intentional tortious conduct by an employer falls within the exclusive jurisdiction of the Act.

[7] The Estate asks that we reexamine our holdings in *Abbott* and *Harsh* and that we adopt an intentional tort exception to the Act. To be clear as to what kind of exception is at issue, the Estate does not argue on appeal that Crossroads acted with specific intent to injure Teague. While the complaint sometimes seemed to assert that Crossroads acted with a specific intent to harm Teague, the district court properly found that these were conclusory statements unsupported by any of the facts alleged in the complaint. For purposes of a motion to dismiss, a court is not obliged to accept as true a legal conclusion couched as a factual allegation, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[19]

Reading the complaint generously, it alleged facts that could show Crossroads intentionally ignored safety rules and concealed known dangers from its employees and that Crossroads knew serious injury to an employee was virtually or substantially certain to occur as a result. We decline the Estate's invitation to overrule precedent and adopt an exception to the workers' compensation exclusivity rule that would allow such a tort action to continue in district court.

It is the "almost unanimous rule" that any intentional conduct exception to the workers' compensation exclusivity rule cannot be "stretched to include accidental injuries caused by the gross, wanton, wil[l]ful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury."[20] In other words, even in jurisdictions recognizing some intentional injury exception to the workers' compensation exclusivity rule, knowingly permitting a hazardous work condition, knowingly

[19] See *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

[20] 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 103.03 at 103-7 (2011).

ordering employees to perform an extremely dangerous job, willfully failing to furnish a safe place to work, willfully violating a safety statute, or withholding information about worksite hazards, still falls short of the kind of actual intention to injure that robs the injury of accidental character.[21] Even in jurisdictions adopting an intentional tort exception, anything short of genuine and specific intent to injure by the employer or the alter ego of the employer will fall within the exclusivity of the workers' compensation act.[22]

The Estate's complaint could be saved only if we were to adopt not just an intentional conduct exception, but one with a broader definition of intentional. Only about a dozen jurisdictions have taken this approach. Those courts have adopted a broader definition of intentional that allows an employer to be sued in tort if the employer knew the tortious conduct was "'substantially certain'" to result in employee injury (or a similar test).[23] We decline to adopt such an exception.

Several of the jurisdictions adopting a "substantially certain" exception have statutes distinct from our own. Those statutes either specify a particular test to exempt the employer's conduct from the workers' compensation act or generally exempt from the workers' compensation act injury resulting from the employer's intentional conduct.[24]

---

[21] *Id*.

[22] See *id*., §§ 103.03 and 103.06.

[23] See, *id*., § 103.04[1] at 103-9. See, also, *Suarez v. Dickmont Plastics Corp*., 229 Conn. 99, 639 A.2d 507 (1994); *Pendergrass v. R.D. Michaels, Inc*., 936 So. 2d 684 (Fla. App. 2006); *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981); *Travis v Dreis & Krump Mfg Co*, 453 Mich. 149, 551 N.W.2d 132 (1996); *Millison v. E.I. du Pont de Nemours & Co*., 101 N.J. 161, 501 A.2d 505 (1985); *Delgado v. Phelps Dodge Chino, Inc*., 131 N.M. 272, 34 P.3d 1148 (2001); *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991); *Parret v. UNICCO Service Co*., 127 P.3d 572 (Okla. 2005); *Harn v. Continental Lumber Co*., 506 N.W.2d 91 (S.D. 1993); *Reed Tool Co. v. Copelin*, 689 S.W.2d 404 (Tex. 1985); *Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946).

[24] See, Cal. Lab. Code § 3602(b)(2) (West Cum. Supp. 2013); Fla. Stat. Ann. § 440.11(1)(b) (West 2009); La. Rev. Stat. Ann. § 23:1032(B) (2010); N.J. Stat. Ann. § 34:15-8 (West 2011).

There appears to be a struggle in those jurisdictions to contain the "substantially certain" exception to the limited circumstances for which it was intended. As observed in Larson's Workers' Compensation Law,[25] one may understand the urge to chip away at the exclusiveness barrier in some of the more egregious cases of employer negligence, but "experience has shown that, once a breach is made in that dam to accommodate an appealing case, it will be very difficult for the courts to know where to draw the line."

[8,9] The blurred line of the "substantially certain" test and the inquiry into the employer's state of mind or, in some jurisdictions, the abstract reasonable employer's state of mind, interjects complexities, costs, delays, and uncertainties into the compensation process. Delay, cost, and uncertainty are contrary to the underlying purposes of the Act. The Act was intended by the Legislature to simplify legal proceedings and to bring about a speedy settlement of disputes between the injured employee and the employer by taking the place of expensive court actions with tedious delays and technicalities.[26]

[10] Regardless of the egregiousness of the employer's actions, the question is what court has jurisdiction over the employee's claim. This is a workers' compensation law question, not a tort question.[27] The Workers' Compensation Court is a statutorily created court designed to have jurisdiction over all injuries falling within the scope of the Act. As a statutorily created court, it is the role of the Legislature to determine what acts fall within the Workers' Compensation Court's exclusive jurisdiction.[28] The Act creates rights which did not exist at common law, and the Legislature may place such restrictions thereon as it sees fit.[29]

---

[25] See 6 Larson & Larson, *supra* note 20, § 103.04[4] at 103-39.

[26] See, *Gill v. Hrupek*, 184 Neb. 436, 168 N.W.2d 377 (1969); *Beideck v. Acme Amusement Co.*, 102 Neb. 128, 166 N.W. 193 (1918).

[27] 6 Larson & Larson, *supra* note 20.

[28] See *Grandt v. Douglas County*, 14 Neb. App. 219, 705 N.W.2d 600 (2005).

[29] *Id.*

[11] We assume that our interpretation of the Act in *Abbott* and *Harsh* was consistent with the Legislature's intended meaning, as the Legislature has had innumerable occasions to express a contrary intent.[30] Indeed, the definition of "accident" under the Act has remained substantially unchanged since the enactment of § 48-151 in 1913.[31] Changes in the workers' compensation laws, and in the public policies recognized in those laws, must emanate from the lawmaking power of the Legislature and not from the courts.[32] Absent an amendment to the Act, we will not judicially create a "substantially certain" exception from the Act's intended exclusive jurisdiction over workplace injuries.

## 2. Is Act Unconstitutional?

The Estate alternatively argues that if injuries resulting from intentional tortious conduct by the employer are the result of an "accident" under the Act, then the Act is unconstitutional. Before reaching the Estate's constitutional arguments, however, we must address the Estate's argument that it is premature for this court to do so.

### (a) Scope of Motion Pursuant to § 6-1112(b)(6)

The Estate asserts that insofar as it raised constitutional challenges to the Act, its complaint was not properly the subject of a motion to dismiss pursuant to § 6-1112(b)(6). The Estate argues that such issues are "substantive" and cites the proposition that "[b]ecause a [§ 6-11]12(b)(6) motion tests the legal sufficiency of the complaint, not the claim's substantive merits, a court may typically look only at the face of the complaint to decide a motion to dismiss."[33] The Estate's reliance on this proposition is misplaced. The complaint was dismissed

---

[30] See *Johnsen v. Benson Food Center*, 143 Neb. 421, 9 N.W.2d 749 (1943).

[31] 1913 Neb. Laws, ch. 198, § 52, p. 601.

[32] See, e.g., *Matheson v. Minneapolis Street Ry. Co.*, 126 Minn. 286, 148 N.W. 71 (1914).

[33] *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 82, 727 N.W.2d 447, 452 (2007).

because the Act precludes tort actions for work-related injuries, not on the underlying substantive merits of the Estate's alleged tort claims.

[12] A plaintiff does not immunize a complaint against a § 6-1112(b)(6) motion to dismiss merely by challenging the constitutionality of the laws governing the ability to state the alleged claim. Even novel issues may be determined on a motion to dismiss where the dispute is not as to the underlying facts but as to the interpretation of the law, and development of the record will not aid in the resolution of the issues.[34] Because the constitutional arguments raised in the Estate's complaint do not depend upon the development of the alleged facts, the complaint was properly the subject of a motion to dismiss. We consider now the correctness of the district court's determination that the facts, assumed as true, failed to demonstrate a cause of action in the district court.

(b) Disparate Categories
of Tort Victims

The Estate argues that the Act creates unconstitutionally disparate standards of exclusivity for employees versus employers. The Estate also argues that the Act creates an unconstitutional distinction between intentional tort victims who are employees and intentional tort victims who are not employees. According to the Estate, such classifications or disparate treatment violate the equal protection, due process, and special legislation provisions of the U.S. and Nebraska Constitutions. Because the employers and employees—and employed and unemployed tort victims—are not similarly situated, it was rational and proper for the Legislature to treat those categories differently under the Act. To the extent that the Estate makes a cognizable argument under the three constitutional principles cited, that argument is without merit.

[13] Under the Equal Protection Clause, economic and social welfare categorizations are subject to a rational basis

---

[34] *Madison v. American Home Products Corp.*, 358 S.C. 449, 595 S.E.2d 493 (2004).

review.[35] The Equal Protection Clause is satisfied as long as there is (1) a plausible policy reason for the classification, (2) the legislative facts on which the classification is apparently based may rationally have been considered to be true by the governmental decisionmaker, and (3) the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.[36] The Equal Protection Clause does not forbid classifications; it simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike.[37]

Due process, as relates to the legislative challenges here, is similarly satisfied, so long as the Legislature's power was not exercised in an arbitrary, capricious, or unreasonably discriminatory manner, and if the act, being definite, had a reasonable relationship to a proper legislative purpose.[38]

[14] The Estate's arguments on special legislation also depend on whether the Legislature has acted arbitrarily and unreasonably. A Legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.[39] The Estate does not argue that the Act created a permanently closed class.

[15] As the U.S. Supreme Court and other jurisdictions have recognized, employers and employees stand in different relations to the common undertaking.[40] It was rational for the

---

[35] See *Otto v. Hahn*, 209 Neb. 114, 306 N.W.2d 587 (1981). See, also, *Dandridge v. Williams*, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970); *Schiel v. Union Oil Co. of California*, 219 P.3d 1025 (Alaska 2009).

[36] *Le v. Lautrup*, 271 Neb. 931, 716 N.W.2d 713 (2006).

[37] See *id*.

[38] *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990).

[39] *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 813 N.W.2d 467 (2012).

[40] See, e.g., *Middleton v. Texas Power & Light Co.*, 249 U.S. 152, 39 S. Ct. 227, 63 L. Ed. 527 (1919); *Cunningham v. Aluminum Co. of America, Inc.*, 417 N.E.2d 1186 (Ind. App. 1981); *Matheson v. Minneapolis Street Ry. Co.*, *supra* note 32.

Legislature to recognize this fact when determining employers' and employees' respective rights and liabilities under the workers' compensation system.[41]

Employers agree under the Act to be liable without fault for accidental injuries sustained by employees in the scope and course of their employment.[42] These were injuries for which employers were not liable under common law.[43] Employers also give up, under the Act, affirmative defenses to liability such as assumption of risk and contributory negligence.[44]

Employees, for their part, give up potentially larger awards under tort law in exchange for a broader and more predictable basis for liability.[45] Employees were also given a quicker and more cost-effective means to obtain compensation than through the traditional tort system.[46]

[16] As the Estate frames the categories and the distinctions, when the injury is caused by the employee's willful negligence, the exclusivity of the Act does not apply; when the injury is caused by the employer's willful negligence, the exclusivity of the Act does apply. But the categorizations crafted by the Estate are not the ones the Legislature had in mind. Employees generally gave up their rights to recover under tort law, but they received in exchange no-fault benefits that they quickly receive for most economic losses from work-related injuries.[47] Compensability under the Act was meant to be a benefit for the employee, not solely a protection for the employer. The Legislature simply drew the line of employer liability—and thus the "exclusivity" of the Act—at the point where the

---

[41] *Id.*

[42] See, e.g., *New York Central R. R. Co. v. White*, 243 U.S. 188, 37 S. Ct. 247, 61 L. Ed. 667 (1917).

[43] *Id.*

[44] See *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003).

[45] See, *New York Central R. R. Co. v. White, supra* note 42; *Jackson v. Morris Communications Corp., supra* note 44.

[46] *Id.*

[47] *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013).

employee's willful negligence caused his or her own injury. Employees injured by the employer's willful negligence will be compensated under the Act, but employees injured by their own willful negligence will not be compensated under the Act. It was not arbitrary for the Legislature to determine coverage under the Act based on whose willful negligence caused the injury.

[17] Likewise, the Legislature made a rational distinction between intentional tort victims who are employees and intentional tort victims who are not employees. Workers' compensation law reflects a policy choice that employers bear the costs of employees' work-related injuries, because employers are in the best position to avoid the risk of loss by improving workplace safety.[48] Such policy does not support the idea that employers should bear the cost of injuries incurred outside of employment. The Act is simply not designed to govern the rights of nonemployees. As such, employees and nonemployees, whether victims of intentional torts or of simple negligence, are not similarly situated. The Legislature did not act arbitrarily or unreasonably in treating these distinct categories differently.

The Estate also briefly mentions the right to a trial by jury guaranteed by the Seventh Amendment. The Estate writes: "For example, but without limitation, because intentional torts and criminal conduct are not an accident, individuals such as [the Estate] should not lose their right to a trial by jury."[49] To the extent this qualifies as an argument and that it raises any point not already addressed, the U.S. Supreme Court has rejected Seventh Amendment challenges to workers' compensation laws.[50] We find no merit to the Estate's argument that the Act violates the Estate's right to a jury trial.

The particular compromises made in crafting the Act are rational and relevant to the purposes of the Act. The distinct

---

[48] *Id.*

[49] Brief for appellant at 26.

[50] *Mountain Timber Co. v. Washington*, 243 U.S. 219, 37 S. Ct. 260, 61 L. Ed. 685 (1917).

treatment or categorizations that may follow from the workers' compensation scheme will not always result in mathematical niceties and, in some circumstances, may lead to inequality.[51] But this does not make the Act unconstitutional. The Estate has failed to sustain its burden[52] of establishing the unconstitutionality of the Act under the equal protection, due process, special legislation, or right-to-jury provisions of the U.S. and Nebraska Constitutions.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of the Estate's complaint. The Estate must seek compensation from the employer for Teague's death exclusively from the Workers' Compensation Court.

AFFIRMED.

CASSEL, J., not participating.

---

[51] See *Otto v. Hahn, supra* note 35.

[52] See, e.g., *State ex rel. Bruning v. Gale*, 284 Neb. 257, 817 N.W.2d 768 (2012).

---

STATE OF NEBRASKA, APPELLANT, v.
ERIC C. THACKER, APPELLEE.

STATE OF NEBRASKA, APPELLANT, v. GAIL
L. MORGAN-THACKER, APPELLEE.

___ N.W.2d ___

Filed May 31, 2013.    Nos. S-12-895, S-12-896.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Appeal and Error.** An appellate court reviews questions of law independently of the lower court.
3. **Criminal Law: Statutes: Appeal and Error.** It is a fundamental principle of statutory construction that courts strictly construe penal statutes, and it is not for the courts to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there.
4. **Criminal Law: Statutes: Legislature: Intent.** A court gives penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy.